

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| WILLIAM LARRY WEAVER, | ) | CV 06-94-M-DWM |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF MONTANA and BARRY GOODRICH, | ) | |
| Warden of Coffee County | ) | |
| Correctional Facility | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

United States Magistrate Judge Jeremiah C. Lynch entered Findings and Recommendation in this matter on May 24, 2007. Judge Lynch recommended dismissing Petitioner's Complaint and Amended Complaint and counting the dismissal as a "strike" pursuant to 28 U.S.C. § 1915(g). Weaver timely objected on July 11, 2008. Weaver therefore is entitled to de novo review of those portions of the Findings and Recommendation to which he objected. 28 U.S.C. § 636(b)(1). The portions of the Findings and Recommendation not specifically objected to will be reviewed for clear error. McDonnell Douglas Corp. v. Commodore Bus.

1

Mach., Inc., 656 F.2d 1309, 1313 (9th Cir. 1981).

I.  Procedural Background

Weaver filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 following his conviction in Montana state court for the murder of James Fremou. The Court previously denied his second, third, and fourth claims. The only claim remaining is his first claim of ineffective assistance of trial counsel.

Weaver's petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year statute of limitations set forth in 28 U.S.C. § 2244(d). He filed the petition after the statute of limitations had passed. However, Weaver argued that his petition was not barred under AEDPA because he can prove he is actually innocent. Judge Lynch found Weaver had not met the actual innocence standard, set forth in Schlup v. Delo, 513 U.S. 298 (1995), necessary to equitably toll AEDPA's statute of limitations.

Weaver objected to Judge Lynch's finding that he had not met the Schlup standard for actual innocence. Because Weaver's claim of actual innocence presented a close question, on December 19, 2007, the Court ordered an evidentiary hearing on the matter before deciding whether to adopt Judge Lynch's Findings and Recommendation. The Court also appointed counsel to represent Weaver at the evidentiary hearing.

On November 24, 2008, the Court held the evidentiary hearing. After considering all the evidence presented by Petitioner and Respondent, I agree with Judge Lynch's analysis and conclusions, and I adopt his Findings and Recommendation in full. The parties are familiar with the factual background of the case, so it will not be fully restated here.

II. Actual Innocence Standard

Neither the United States Supreme Court nor the Ninth Circuit Court of Appeals has directly addressed whether a habeas petitioner may equitably toll AEDPA's statute of limitations by making a showing of actual innocence. Several courts of appeals to address the issue, however, have determined that actual innocence may equitably toll AEDPA's statute of limitations. E.g. Souter v. Jones, 395 F.3d 677 (6th Cir. 2005). Moreover, in Majoy v. Roe, 296 F.3d 770 (9th Cir. 2002), the Ninth Circuit indicated, if an actual innocence exception to the statute of limitations does exist, the standard for determining its applicability is set forth in Schlup, 513 U.S. 298. The Schlup test for actual innocence does not go to the merits of a claim, but is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claims considered on the merits." Id. at 315.

To obtain review of constitutional claims under the standard announced in Schlup, a petitioner must present "evidence of

3

innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Id. at 316. A petitioner meets the standard for actual innocence if he can show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327. In assessing a petitioner's actual innocence claim,

> It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, <u>in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt</u>.

Id. at 329 (emphasis added). The actual innocence exception applies only to a small class of "truly extraordinary" cases that present a risk of manifest injustice. Id. at 327 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)).

In determining whether a petitioner meets the actual innocence standard, the court considers all available evidence, including evidence "alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." Schlup, 513 U.S. at 327.

III. <u>Evidence Presented at the Evidentiary Hearing</u>

In the December 19, 2007, Order setting the evidentiary

hearing, the Court specified the following seven items of evidence that it would admit at the evidentiary hearing because they would be most useful in assessing Weaver's claim:

| | |
|---|---|
| (1) | Testimony from John McKean regarding possession and custody of his rifle around the time of the murder; |
| (2) | Dr. E.P. Catts' entomological report; |
| (3) | Dr. Neal Haskell's entomological report; |
| (4) | Testimony from an expert regarding the accuracy of determining time of death from maggots on a decomposing body; |
| (5) | The original October 1995 letter from Curtis Dye to Missoula law enforcement authorities regarding Weaver's alleged confession; |
| (6) | News articles about the murder admitted into evidence at trial; and |
| (7) | Testimony from Dr. Gary Dale regarding discrepancies in his trial testimony about whether the murder weapon was a shotgun or rifle. |

Prior to and during the evidentiary hearing, the Court also admitted additional evidence, including testimony by Dr. Haskell, further testimony about the type of murder weapon, letters and transcripts of interviews by the State's key witness, and testimony of a forensic toxicologist.

Weaver's first witness, John Zettl, is an expert in forensic toxicology. Mr. Zettl, who did not testify at Weaver's state homicide trial, testified regarding the accuracy of measuring a person's blood alcohol level at the time of death when the person has been dead for approximately a month. At trial, the prosecution's key witness, Curtis "Shorty" Dye, had testified that Fremou had been drinking right before the murder. The

prosecution offered evidence that Fremou's blood and urine had a high blood alcohol content when the coroner conducted the post-mortem examination after his body was discovered, and this evidence was used to corroborate Dye's testimony.

At the evidentiary hearing, Zettl testified that it is impossible to determine blood alcohol content at the time of death from a body that has been decomposing for a month. Weaver argued that Zettl's testimony undermined the credibility of Dye's testimony about Fremou's alcohol consumption prior to the murder. However, Zettl also did not rule out the possibility that Fremou was intoxicated at the time of his death, consistent with Dye's testimony. Resolution of such factual conflicts falls within the ambit of the jury. See U.S. v. Stewart, 420 F.3d 1007, 1015 (9th Cir. 2005). A jury could have heard the expert testimony by Zettl and still found Dye's testimony credible. Zettl's testimony does not prove Weaver's actual innocence.

Weaver next called Gerald Crego, who was Captain in the Missoula County Sheriff's Department at the time of Fremou's murder and was the lead investigator of the murder. Through Crego's testimony, Weaver's counsel introduced a newspaper article about Fremou's death and numerous letters and interviews by Dye. Weaver's counsel argued that contradictions in the letters and interviews, and the similarities in his story to newspaper accounts of Fremou's murder indicated that Dye had

6

fabricated his story. Dye's letters and interviews displayed some inconsistencies, including the number of people involved in murdering Fremou and whether he knew who owned the murder weapon and where it could be found.

It is within the province of the jury to make credibility determinations about witnesses. See U.S. v. Kilby, 443 F.3d 1135, 1140 (9th Cir. 2006). The jury knew Dye was a fellow inmate who perhaps had ulterior motives in testifying against Weaver, and the jury had evidence about the newspaper account of Fremou's death, which contained details very similar to the details in Dye's account of the murder. The jury also heard other evidence about the crime scene that corroborated Dye's testimony, and heard testimony that Weaver had confessed to others that he had killed Fremou. Based on this evidence, a reasonable juror could have concluded that Dye was a credible witness. The evidence about Dye's testimony does not prove Weaver's claim of actual innocence.

Weaver asserted that evidence regarding the murder weapon proved his innocence. The State argued at trial that the murder weapon was an 8mm rifle. The rifle was allegedly owned by Weaver's friend, John McKean, at the time of the murder, but was pawned just days after Fremou's death. The police were unable to locate McKean's pawned rifle. Crego testified at the evidentiary hearing that he had found 30.06 casings at the site where

7

Fremou's body was found. Crego testified that, in his experience, an 8mm rifle could not fire 30.06 casings without substantial modifications.

In his objections to Judge Lynch's findings, Weaver claimed the transcription of trial testimony by the State Medical Examiner, Dr. Gary Dale, undermined the State's theory regarding the weapon because Dr. Dale indicated that the murder weapon was a shotgun, not a rifle. Prior to the evidentiary hearing, the parties stipulated that any references by Dr. Dale to a shotgun were mistakes in transcription and that he had testified that the murder weapon was a rifle, consistent with the State's theory.

Weaver offered a video deposition by John McKean at the evidentiary hearing regarding the 8mm rifle. McKean did not testify at Weaver's trial. In the deposition, McKean denied ever owning an 8mm rifle or pawning it in October 1993. However, these statements were contradicted by information in the police reports and evidence of the pawn shop transaction. Further, in 1998, McKean stated in an affidavit that he had a rifle, but had never let Weaver use it. During the deposition, McKean denied any memory of completing the affidavit. He was certain though, that he never would have left a gun at Weaver's house.

While there is conflicting evidence about the murder weapon, Weaver has not proven it is more likely than not that "no reasonable juror would have found [him] guilty beyond a

8

reasonable doubt." Schlup, 513 U.S. at 327. The jury heard Dr. Dale's testimony that the murder weapon was a rifle. Based on this evidence, a reasonable juror still could have concluded Weaver committed the murder. Given the contradictions in McKean's statements, a jury may not have found his testimony credible. The conflicts in the evidence regarding the murder weapon do not prove Weaver's actual innocence.

Both the Attorney General and Weaver introduced forensic entomological experts, Dr. Neal Haskell and Dr. Madison Goff, respectively. The experts discussed a report (the "Catts Report") by another forensic entomologist, Dr. E. P. Catts, that analyzed maggots found on Fremou's body to make a determination of the date of death. The Catts Report concluded that Fremou's murder occurred after October 13, 1993. This date would have ruled out Weaver as the perpetrator. However, Dr. Catts was deceased at the time of trial and could not testify to his conclusions. Dr. Haskell reviewed the Catts Report prior to Weaver's trial and reached a different conclusion than Dr. Catts. Neither the Catts Report nor testimony about Dr. Haskell's disagreement with it was introduced at Weaver's homicide trial.

At the evidentiary hearing, Dr. Haskell provided an explanation for his disagreement with the Catts Report. He noted a typographical error regarding temperature in the Catts Report, and he testified that the correct temperature would require a

9

date of death earlier than October 13. In his opinion, Fremou's death had to occur October 10 or earlier in order for the maggots to reach the stage of development observed when Fremou's body was discovered.

Weaver's own expert, Dr. Goff, disagreed with the Catts Report as to the date of Fremou's death, and he believed the Catts Report contained errors and omissions in its analysis. Dr. Goff testified that, in his expert opinion, it was difficult to reach a conclusion about the date of death, but given the available data, he concluded that Fremou died October 11 or 12 at the latest.

The Catts Report, as well as the expert opinions provided by Dr. Haskell and Dr. Goff do not show that "no reasonable juror would have found [Weaver] guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. While the Catts Report's conclusion about Fremou's date of death could have exculpated Weaver, the other experts who reviewed the data pointed out errors in Dr. Catts' analysis. Dr. Haskell conclusively stated, and Dr. Goff thought it likely, that Fremou was killed prior to October 13, consistent with the State's theory as to when Weaver would have committed the murder. A jury, after hearing evidence of the Catts Report and the testimony of Dr. Haskell and Dr. Goff, could have concluded that the Catts Report was incorrect, and the murder occurred earlier than October 13, when Weaver could have

committed it.

Based upon all of the evidence at trial and newly presented evidence at the evidentiary hearing, the Court agrees with Judge Lynch that Weaver has not met the actual innocence standard. Even in light of the newly presented evidence offered by Weaver at the evidentiary hearing, a reasonable juror still could have found him guilty beyond a reasonable doubt. Therefore, he has not met the Schlup standard necessary to equitably toll the statute of limitations and allow him to proceed with his time-barred petition.

I find no clear error in Judge Lynch's remaining findings and recommendations.

IV. Conclusion

IT IS HEREBY ORDERED that Judge Lynch's Findings and Recommendation (dkt #23) are adopted in full. Petitioner's first claim for relief and his petition for writ of habeas corpus (dkt #1) are DENIED for failure to comply with the applicable statute of limitations.

The Clerk of Court is directed to enter, by separate document, a judgment in favor of Respondent and against Weaver.

The Clerk of Court is further directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of Weaver's second, third, and fourth claims would not be taken in

good faith. A certificate of appealability is granted as to whether Weaver's first claim for relief is barred by the AEDPA statute of limitations.

Dated this 12th day of December, 2008.

15:25p

Donald W. Molloy, District Judge
United States District Court